ROBERT LARRY ACORN, PLAINTIFF-RESPONDENT, v. GAIL
K. FAIR (ACORN), DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 24, 1986—Decided March 14, 1986.

Before Judges MORTON I. GREENBERG, LONG and HA-VEY.

*Faro, Ferraiolo & Portanova,* attorneys for appellant (*Jeffrey M. Faro* on the brief).

*Tuttle & Zisgen,* attorneys for respondent (*Robert P. Zisgen* on the brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

This is post-judgment matrimonial litigation in which defendant Gail K. Fair appeals from an order denying her applications made under *R.* 5:7–4 to compel plaintiff Robert Acorn, her former husband, to make support payments through the Bergen County Probation Department rather than directly to her.

The parties were married in 1969 and divorced in February 1982. They have one child, Amy, presently 11 years of age. Plaintiff had been paying $800 per month directly to defendant for Amy's support pursuant to a support agreement incorporated into the divorce decree. He met his monthly obligation by $400 payments made on the 1st and 15th of each month.

On November 30, 1984 defendant moved to compel payment through the probation office because plaintiff's August 15 and September 1, 1984 checks were not delivered until August 22 and September 3 respectively. Defendant also claimed that plaintiff's May 1, 1982 check had been returned for insufficient funds and that plaintiff had not made the November 1, 1984 payment. The trial court entered an order on January 14, 1985 denying defendant's request but permitting her to submit an *ex parte* certification and order if any subsequent payment was not received within ten days from its due date. Defendant immediately responded by filing for such an *ex parte* order claiming that plaintiff was misdesignating his checks for the wrong weeks, was required to send a $1,600 replacement check for four payments plaintiff claimed had been "misplaced", and was harassing her by having his present wife sign the checks. The trial court again denied her application, concluding that plaintiff had made a "good-faith effort to comply with prior [support] orders[.]"

On appeal defendant argues that plaintiff's "good-faith" compliance with the support order is not a sufficient basis to deny her request for payments to be made through the probation office. We agree and accordingly reverse.

*R.* 5:7–4 reads in pertinent part as follows:

> The judgment or order shall provide that payments be made through the Probation Office of the county in which the person against whom the award is made resides.... Alimony, maintenance or child support payments not presently made through the county Probation Office *shall be so made upon application of the payee* unless the payor upon application to the court shows good cause to the contrary. [Emphasis supplied].

Thus, payments through probation are compulsory upon the payee's request unless the payor demonstrates "good cause to the contrary."

*R.* 5:7–4 evolved from the source rule, *R.* 4:79–9(a) which had been revised in several significant respects since its adoption in 1969. The original rule did not provide for payments through the probation office upon application of the payee. In 1975 the rule was amended to require the court, when payments are to be made through probation, to send to the appropriate probation office two additional copies of the judgment or order with prepared statements showing the parties' addresses, telephone numbers and places of employment. The purpose of the revision was "both to ensure and to expedite the setting-up of the probation account." *Pressler, Current N.J. Court Rules,* Comment *R.* 5:7–4 (1986). The rule was again amended in 1982 to require specific reference in the judgment or order to the availability of income execution. This amendment also added the provision in question here, requiring that payments be routinely made through the probation office upon the payee's request unless the payor shows good cause to the contrary. *Id.* at 1099. The rule was amended again in 1983 requiring the parties to submit their social security numbers as part of their personal information statement attached to the judgment or order.

We read *R.* 5:7–4 as intending that all alimony and support payments be made through the probation office upon the payee's request unless exceptional circumstances exist, beyond the fact that the payor has substantially complied with the obligation, which would justify direct payment to the payee. A clear purpose of the rule is to establish a uniform and independent record keeping procedure in each county and to

provide a central repository for all essential information thereby facilitating enforcement proceedings commenced by litigants and county welfare departments. Without question, channeling of alimony and support payments through the probation office is in keeping with the rule's purpose, and aids in the "just, expeditious resolution of the matrimonial case." *Supreme Court Committee on Matrimonial Litigation, Final Report,* (July 1981) at p. 1. Payment through probation obviously minimizes unnecessary and time-consuming litigation triggered by unrecorded "cash" payments purportedly made by payors; or by the payors' purchase of clothing and other items for his or her children "in lieu" of support payments, or as occurred here, by payments being "misplaced" by either the payee or payor.

In the context of the rule's evident purpose, we believe that the "good cause" exception must be narrowly construed so as to include only those payors who demonstrate exceptional circumstances. A payor, for example, who because of a physical or other infirmity is unable to obtain a money order or certified check as may be required by the probation office, may have good cause to make direct payment to the payee. It may be good cause to except the payor whose obligation is predicated on a percentage of earnings basis which varies weekly given the problems inherent in such a scheme from a public agency's point of view. Or a payor whose obligation is met through a wage garnishment, the record of which is readily available from the payor's employer, may be exempt from the rule's mandate. But in our view the purpose of the rule would be significantly eroded if the "good cause" exception is construed to excuse a payor from paying through probation based solely on substantial compliance with his or her support obligation. The potential would remain, as clearly evidenced here, for the unnecessary filing of enforcement motions, whether meritorious or not.

Requiring payment through the probation office upon the payee's request is not unduly punitive to the payor. On the

contrary, it insulates the payor from potential hostile confrontations with the payee which could bloom into costly litigation. It affords the payor a reliable method of rebutting unfounded claims that he or she has underpaid. The added inconvenience of paying through the probation office is not, in our view, an unfair price to pay.

While we do not question plaintiff's good faith in the manner by which he has complied with the support order, we are satisfied that he has failed to demonstrate "good cause" sufficient to spare him from the mandate of the rule. In the circumstances the trial court erred in denying defendant's application for payments to be made through the Bergen County Probation Department.

The order denying defendant's motion is reversed. We remand for entry of an order not inconsistent with this opinion. We do not retain jurisdiction.